UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

KEVIN LORENZO WALLER, D-1,
and MICHAEL VINCENT LARRY,
D-2,

       Defendants.
_____/

Case No. 15-cr-20310
Hon. Mark A. Goldsmith

**ORDER DENYING DEFENDANTS' MOTION TO SUPPRESS EVIDENCE (Dkt. 41), DENYING DEFENDANT WALLER'S MOTION TO DISMISS SENTENCING ENHANCEMENT (Dkt. 40), AND DISMISSING DEFENDANT WALLER'S DISCOVERY MOTION (Dkt. 39)**

**I. MOTION TO SUPPRESS**

**A. Background**

Defendants are charged in the Indictment with conspiracy to possess with intent to distribute cocaine and heroin, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846, and possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 2 (Dkt. 1). The charges are based upon a series of seizures of packages sent through the United States mail, the first of which forms the basis for Defendants' motion to suppress. See generally Def. Mot. to Suppress (Dkt. 41). Waller's co-defendant, Michael Larry, joined in that motion (Dkt. 42). A hearing on the motion was held on April 21, 2016.

Of the three packages seized over the course of the Government's investigation, only the first package, the "Hindle Parcel," is effectively at issue, as it formed the basis for the subsequent

1

two package seizures. Def. Mot. at 10.¹ Employing a "fruit of the poisonous tree" theory, Defendants seek to exclude substantially all of the evidence gathered as a result of the Government's interception of the Hindle Parcel. Id. at 2, 10-11.

None of the following facts was disputed at the hearing: On December 10, 2014, the Hindle Parcel arrived at a post office in Allen Park, Michigan. Id. at 3. It originated in City of Industry, California. Id. at 3. The Priority Mail parcel was addressed to 10261 Hindle, Detroit, MI 48211. Id. A United States Postal Inspector, Edmond Rose, was conducting routine "interdiction activities" at the post office when he observed the Hindle parcel arrive on December 10, 2014. Id. at 4. Rose noticed certain "characteristics" that indicated the parcel may contain drugs. Id.; Gov't Resp. at 11 (Dkt. 47). Specifically, (i) the package weighed 9 pounds, 3.8 ounces, i.e., more than two pounds; (ii) the package had a handwritten label; (iii) a computer search revealed that the listed sender was not associated with the otherwise-valid return address; and (iv) the origin and destination of the parcel — California and Detroit — were known, respectively, to be a source and destination for controlled substances. Def. Mot. at 4. It was also relevant to Rose that the package was sent via Priority Mail. Gov't Resp. at 17; Rose/Hindle Aff. at 2 (cm/ecf page) (Dkt. 41-1). According to Rose's affidavit, based upon his training and experience, these data suggest that a package might contain drugs. Rose/Hindle Aff. at 3-4 (cm/ecf pages).

Based on the suspicion that those factors created, Rose removed the Hindle parcel from the sorting area and secured it in his office. Gov't Resp. at 4. He then arranged for a K-9 officer and dog from the Grosse Pointe Police Department to come to the Allen Park facility and sniff the package. Id. The dog — which was trained, certified, and proven as an effective controlled

---

¹ The package is so-named because it was addressed to 10261 Hindle, Detroit, MI 48211. Def. Mot. at 3.

substance-detecting dog, see Rose/Hindle Aff. at 4 (cm/ecf page) — alerted when it approached the Hindle parcel, indicating that there were drugs inside. Id. Based on that indication, a warrant to search the package was obtained from a United States Magistrate Judge; when the parcel was opened pursuant to the warrant, drugs were found. See Gov't Resp. at 4-5. The investigation continued, ultimately resulting in the charges that Defendants currently face.

### B. Analysis

"It has long been held that first-class mail such as letters and sealed packages subject to letter postage . . . is free from inspection by postal authorities, except in the manner provided by the Fourth Amendment." United States v. Van Leeuwen, 397 U.S. 249, 251 (1970). The Sixth Circuit has held that "only reasonable suspicion, and not probable cause, is necessary in order to briefly detain a package for further investigation, such as examination by a drug-sniffing dog." United States v. Robinson, 390 F.3d 853, 870 (6th Cir. 2004). To find reasonable suspicion, the government must "point to 'specific and articulable facts, which taken together with rational inferences from those facts,' reasonably suggest" a basis for seizure. United States v. Urrieta, 520 F.3d 569, 573 (6th Cir. 2008). Courts look to the "totality of the circumstances" at the time of seizure, and an officer must "not act on an 'inchoate and unparticularized suspicion or 'hunch,' but on . . . specific reasonable inferences[.]'" Id. (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)); United States v. Underwood, 97 F.3d 1453, at *3 (6th Cir. 1996) (table) (applying Terry factors to package seizure).

Based on Sixth Circuit precedent, the characteristics that Rose observed, together with his experience, adequately support that Rose had reasonable suspicion to detain the package here. In United States v. Alexander, 540 F.3d 494 (6th Cir. 2008), for example, the defendant challenged the initial inspection as lacking reasonable suspicion. A detective working for the local police

department in parcel interdiction duty discovered the suspicious package. The purported foundations for the detective's suspicions were as follows: (i) the sender waived requiring the post office to obtain a signature upon receipt; (ii) the package came from an area where drugs often originated, in the detective's experience; (iii) it was addressed to an area where drugs were often sent, in the detective's experience; (iv) the label was handwritten; (v) the sender had not listed a telephone number; (vi) the package exceeded 6 pounds and felt "dense;" (vii) the return address, entered into a computer, came back as "nonexistent." Id. at 497. A dog was called and indicated drugs, leading to a search warrant.

The district court in Alexander credited the detective's experience and concluded that he had explained sufficient articulable facts to support a reasonable suspicion that the package contained drugs. See id. at 499. The Sixth Circuit affirmed, approving the detective's reliance on the signature waiver, the density of the package, the handwritten label, his knowledge about the origin and destination, and the fictitious return address. Id. at 501.

Here, like in Alexander, the origin and destination were known by the inspector to be nodes of drug trafficking, the label was handwritten, and the return address was fictitious insofar as the listed sender was not associated with it. See also Robinson, 390 F.3d at 859 (return address from a known drug distribution area; handwritten label). Similarly, Alexander's reference to the package's density is akin to a reference to its weight, which Rose here used to form his suspicion. See also Van Leeuwen, 397 U.S. at 252 (noting that the "weight of the packages," among other things, justified detention).

At bottom, these factors aggregate to something well beyond an "inchoate and unparticularized suspicion or hunch." All of the characteristics of the package that Rose deemed suspicious have been recognized as suspicious by courts in the Sixth Circuit. And courts have

4

concluded that the detention of a package was reasonable based on as many, or fewer, indicia of contraband. See, e.g., United States v. Allen, 990 F.2d 667, 671 (1st Cir. 1993) (recipient received Express Mail more often than is normal; recipient had received suspicious packages in the past; return addresses of past packages were different, but written in same handwriting; one of past senders had same name as someone known to have mailed drugs); United States v. Lux, 905 F.2d 1379, 1382 (10th Cir. 1990) (three unspecified factors from Postal Service's "drug package profile" justified dog sniff); United States v. Cantrall, 762 F. Supp. 875, 879 (D. Kan. 1991) (handwritten label; return addressee and return address did not match; origin from a known source city of narcotics to a residential area); United States v. Sklar, 721 F. Supp. 7, 10 (D. Mass. 1989) (recipient received several packages within short time from known drug source area; all but one of the return addresses was fraudulent; same sender used several different return addresses).

Defendants also conclude, without elaboration, that Rose's efforts unreasonably delayed the delivery of the package. Def. Mot. at 1. A detention can be unreasonable when its duration causes a "meaningful interference with [a] defendant's possessory interest" in a parcel. Robinson, 390 F.3d at 870. In addition to having reasonable suspicion, however, Rose did not detain the package for an unreasonable period of time. Here, as in Allen, the law enforcement officers involved acted diligently in detaining the package only as long as necessary to execute the dog sniff, and no evidence suggests that the law enforcement officials could have acted more swiftly. See Allen, 990 F.2d at 671. Additionally, the Hindle parcel was not scheduled to be delivered until December 11, 2015, which is the same date on which the Government obtained probable cause and searched the package. Gov't Resp. at 4. Courts have held that a person does not have a significant possessory interest in a package until its guaranteed delivery time. Id. at

672 (citing United States v. LaFrance, 879 F.2d 1, 7 (1st Cir. 1989) (property right in a package does not arise until the moment that the recipient is contractually entitled to the package)). The fact that the preliminary investigation did not delay the package beyond its scheduled delivery date thus refutes Defendants' bare-bones claim of unreasonable delay.

The brief detention of the Hindle parcel, just long enough to employ a dog sniff, was thus properly founded upon reasonable suspicion. Defendants' own theory of this issue rests upon the Hindle parcel as a foundational element of the Government's subsequent investigation. See Def. Mot. at 5. Defendants do not dispute that the result of the dog sniff sufficed to obtain a warrant to search the Hindle parcel; nor do they attack interdiction and search of the other parcels on any basis other than to the detention of the Hindle parcel. In light of the fact that the Hindle parcel was lawfully detained, searched, and seized, Defendants' fruit-of-the-poisonous-tree argument fails. See United States v. Crowder, 62 F.3d 782, 787-788 (6th Cir. 1995) (without predicate Fourth Amendment violation, "fruit of the poisonous tree" analysis not triggered). Defendants' motion is, therefore, denied.

## II.  MOTION TO DISMISS SENTENCING ENHANCEMENT

On June 29, 2015, the Government filed a notice of its intent to seek sentencing enhancement, pursuant to 21 U.S.C. § 851 as to Waller (Dkt. 8). Waller, who has not yet pleaded guilty or been sentenced, filed a motion to dismiss the Government's notice (Dkt. 40).[2] Waller does not dispute that he is technically eligible for the sentencing enhancement that the Government intends to seek. Rather, Waller relies on a "mandate" from then-Attorney General Eric Holder (the "Holder Memo"), which directs that federal prosecutors should only seek a § 851 sentencing enhancement when a defendant "is involved in conduct that makes the case

---

[2] Larry, who was not identified in the Government's notice, did not join in Waller's motion.

appropriate for severe sanctions," which Defendant argues is not present here. Waller Mot. at 2-3; Holder Memo at 3.

The Government filed a response to the motion (Dkt. 45). It argued that (i) the Holder Memo is a non-binding suggestion; and (ii) Waller's history, as well as the conduct surrounding the instant offense, justify "severe sanctions" in any case. Gov't Resp. at 2-4.

At the hearing on the motion, the Court ordered supplemental briefing on the issue whether Waller's motion was premature, in the sense that an opinion on Waller's motion would constitute an advisory opinion in violation of Article III, section 2, of the United States Constitution. The Government and Waller submitted briefs (Dkts. 48, 49).

Courts in this jurisdiction, including this Court, have previously considered whether there is jurisdiction to determine the applicability of sentencing statutes and guidelines to a defendant who had not pleaded guilty or been convicted. See United States v. Thompson, No. 12-cv-20656, 2012 WL 6214428, at *2-*3 (E.D. Mich. Dec. 13, 2012); United States v. Easley, No. 10-cr-20642, 2011 WL 1743905 (E.D. Mich. May 6, 2011). In Easley, the defendant, who had not yet entered a guilty plea, sought a determination of the applicability of the Fair Sentencing Act ("FSA"). The court held that:

> [T]he Court cannot grant the defendant's motion and declare that the FSA's penalties will govern his sentence. Easley has not been convicted. He has not even expressed an intention to enter a guilty plea. Even if the Court were to decide that the FSA would apply to a sentence in his case, Easley might not plead guilty, and then go to trial and receive an acquittal. Or, although charged with possession of 12 grams of cocaine base, Easley may be convicted of possession with intent to distribute a lesser amount of cocaine base that would not subject him to a statutory minimum sentence even under pre-FSA law. Under these circumstances, the Court's decision on whether the FSA applies in this case is advisory because the question is not yet ripe.

Easley, 2011 WL 1743905, at *5. The court further held that the defendant, who had been indicted but not convicted, and had not yet pleaded guilty, did not have a right to "be informed with certainty of the potential penalties for the charged offenses up to this point in the case. . . . There is no requirement that the indictment recite the penalties for the charged offenses." Id. at *7. The court concluded: "Should Easley decide to plead guilty, the Court will inform him of the mandatory minimum and maximum sentence that he faces if found guilty. He is free to change his mind once presented with that information." Id.; see also Thompson, 2012 WL 6214428, at 2-*3 (applying Easley in declining to decide a question concerning the Sentencing Guidelines).[3]

Waller does not cite any persuasive authority to counter the reasoning in Easley or Thompson. As he has not yet pleaded guilty or been convicted — and, crucially, because neither of those things might come to pass — this Court declines to decide an issue that has not yet ripened into an actual case or controversy. Waller's motion is, therefore, denied.

### III.  MOTION FOR DISCOVERY

In this motion, Waller sought to enforce a discovery request that his counsel put to the Government, concerning various records from the Government's investigation (Dkt. 39). At the

---

[3] Notably, § 851 requires a court to inquire of a defendant whether he challenges any allegation in the notice of sentence enhancement and conduct a hearing if a challenge is made. 21 U.S.C. §§ 851(b), (c). However, the court is to make an inquiry and conduct any such hearing only "after conviction but before pronouncement of sentence . . . ." Id. § 851(b). Thus, Congress recognized that addressing challenges to a sentencing enhancement prior to conviction would be premature.

At least one court has taken a different view of § 851(b), United States v. Santos, 367 F. Supp. 2d 180 (D. Mass. 2005), a case on which Defendant relies. In Santos, the court allowed the defendant to challenge the constitutionality of a prior conviction on which the sentence enhancement was based prior to the defendant making a "final decision" whether to plead guilty. Id. at 181. The court did so in light of the "unusual circumstances" of that case, including (i) defense counsel's statement that his client would likely plead guilty if the prior conviction was constitutionally infirm, and (ii) a "not insubstantial" showing that the conviction was likely infirm. Id. at 181-182. Even if this Court were to adopt the "unusual circumstances" rationale of Santos, no such circumstances are present here.

8

hearing held on April 21, 2016, however, defense counsel withdrew that motion without prejudice. Accordingly, the motion is denied as moot.

## IV.  CONCLUSION

For the reasons stated above, the Court denies Defendants' motion to suppress (Dkt. 41). It also denies Waller's motion to dismiss sentencing enhancement (Dkt. 40). Waller's motion for discovery (Dkt. 39), having been withdrawn, is denied as moot.

SO ORDERED.


Dated:  May 12, 2016                            s/Mark A. Goldsmith
Detroit, Michigan                               MARK A. GOLDSMITH
                                                United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 12, 2016.

                                                s/Karri Sandusky
                                                Case Manager